IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                         Case No. 17-02402-01-JTM

MARKELL QUASHUN SWEARGIN,

    Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Markell Quashun Sweargin's objections to the Presentence Investigation Report ("PSR") (Dkts. 29 and 35). Defendant objects to use of the word "victim" to characterize Lisa Morales and further argues that the four-level adjustment is improper because Morales was not coerced. The court heard evidence at the hearing on April 19, 2018, and requested supplemental briefing. For the reasons stated herein, defendant's objections to the PSR are overruled.

**I.    Background**

Defendant pleaded guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) to transportation for the purpose of engaging in prostitution, in violation of 18 U.S.C. § 2421(a). The PSR calculated defendant's total offense level as 17 with a criminal history category of II. Defendant's guideline imprisonment range is 27 to 33 months, and the parties have made no agreement under Rule 11(c)(1)(C) as to a specific term of imprisonment. The parties stipulate, however, that a period of 15 years of supervised release is appropriate in this case.

## II. Evidence introduced at the April 19, 2018 hearing

Hobbs Police Officer Jeremy S. Kirk testified that he responded to a domestic disturbance call and encountered Morales. Officer Kirk stated that Morales was scared and crying. According to Officer Kirk, Morales said that defendant got angry with her and they started arguing. Defendant punched and began choking Morales with two hands; he would not let Morales leave the hotel room for some time. Morales's neck was red and she had fresh scrapes on her neck and chest.

After defendant was arrested, Officer Kirk transported Morales to the police station and interviewed her. Officer Kirk testified that Morales explained that she, defendant, and another minor female travelled from Lubbock, Texas, to go to a casino in Hobbs, New Mexico. Morales stated that soon after they arrived, defendant hinted that he wanted her to prostitute herself to make some money. Morales told defendant that she did not want to do anything like that. A short time later, defendant and the other girl left to go to McDonalds's, but Morales stayed behind in the hotel room.

Morales then shared with Officer Kirk that when they were gone, an older white male knocked on her room door. Morales opened the door, and the gentleman asked if he could come in. Thinking that he needed help, Morales let him in. The man immediately asked Morales, "What will you do for $80?" Morales responded that she would not do anything like that. The man said, "That's not what your ad says," and got up and left. Morales told Officer Kirk that she believed defendant made an ad on Backpage.com for her. Morales said that after defendant returned and found out she

did not prostitute herself, the verbal altercation and physical assault occurred. Defendant told Morales that she was not cut out for that lifestyle.

During the incident, law enforcement seized defendant's cell phones. Morales explained to Hobbs Police Sergeant Marina Barrientes that defendant had two phones; one was his, but the other phone was strictly used for people to contact defendant about ads, request prices, and meetings with girls. According to Morales's statement, defendant knew that the police had been called, and he smashed the cell phone used for the ads before the police arrived.

Special Agent Stephani Legarreta with Department of Homeland Security testified that she obtained a search warrant for defendant's phones, but they were only able to get into the cell phone that had not been shattered. S.A. Legarreta stated that she eventually learned Morales was the primary user of this phone. S.A. Legarreta reviewed text messages sent between Morales and defendant and discovered communications where Morales was "begging" defendant not to post a sex video of the two of them. Morales referenced owing $100 to defendant, and stated, "For a hundred dollars you're actually going to do this to me?" S.A. Legarreta testified that based on her investigation, she believed the $100 had to do with prostitution. In their text messages, Morales accused defendant of blackmailing her to pay $100 by threatening to post the sex video. Defendant responded that he was not blackmailing Morales and claimed he would not post it, however, in another series of messages, Morales is again asking defendant not to post "them."

S.A. Legarreta testified that on June 6, 2017, Morales reported to Lubbock police that defendant posted intimate videos of the two of them on Facebook and Snapchat. Morales indicated that defendant would continue to post videos unless she gave him money or other favors. On June 22, Morales told Lubbock police that she had taken care of it and the videos were removed. Morales also declined to pursue prosecution.

During cross examination, S.A. Lagerreta testified that later in her investigation into the present case, Morales said everything was her fault. Morales explained that she and defendant were arguing back and forth at the casino. Morales stated that she was mad at defendant and made up the story she told Hobbs police. Morales also met with a victim's advocate and was adamant that the situation was her fault, not defendant's.

### III. Use of the Term "Victim"

Defendant asserts that Morales was not a "victim." Defendant provides a written statement from Morales and proffers what she would tell the court if she could be present at defendant's hearing. Morales claims that she went voluntarily with defendant to Hobbs and denies that defendant assaulted her. She claims that defendant did not force or coerce her to do anything related to prostitution.

Under the guidelines, "[v]ictim" is defined as "a person transported, persuaded, induced, enticed, or coerced to engage in, or travel for the purpose of engaging in, a commercial sex act or prohibited sexual conduct, whether or not the person consented to the commercial sex act or prohibited sexual conduct." U.S.S.G. § 2G1.1 Application Note 1. Because consent is immaterial to the court's determination as to whether Morales is a victim under § 2G1.1, defendant's objection is overruled. In his plea

4

agreement, defendant admitted that on June 14, 2017, he and Morales traveled to Hobbs where defendant tried to get Morales to engage in a sexual act for money. Morales meets the definition of a victim under the guidelines.

Furthermore, the court credits the government's officers' testimony because it is consistent with Morales's statements at the time of the incident and the evidence presented during the hearing. Morales's current position—she was mad and fabricated the story—is less persuasive because it is inconsistent with the evidence. Additionally, Morales's desire to have defendant released from custody and part of her and their baby's life cuts against her credibility.

## IV. Coercion

Defendant argues that he did not coerce Morales to participate in the events. Under the guidelines, if the offense involves fraud or coercion, the offense level is increased by 4 levels. U.S.S.G. § 2G1.1(b)(1). Without the enhancement, defendant's total offense level would be 13, which results in a guideline imprisonment range of 15 to 21 months under Zone D.

"'[C]oercion includes any form of conduct that negates the voluntariness of the victim." U.S.S.G § 2G1.1(b)(1) Application Note 2. The government bears the burden of proving the sentencing enhancement under § 2G1.1(b)(1) by a preponderance of the evidence. *See United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1217 (10th Cir. 2008) ("At sentencing, 'the government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement.'").

5

The government argues that defendant was pressuring Morales to engage in prostitution since May 17, 2017. The government refers to evidence of defendant threatening to post sex videos of her if she did not agree to prostitute her body. According to the government, this is evidence of blackmail that negates Morales's claim that she voluntarily went along with defendant on a romantic getaway.

Additionally, the government claims that the coercion does not need to occur prior to defendant crossing state lines. It argues that "the plain reading of the Guideline is clear that the fraud or coercion can occur at any time while the offense is occurring." (Dkt. 39, at 3).

Defendant cites several cases and argues that the enhancement is appropriate when fraud, coercion, or physical force are integral parts of the criminal act. Defendant argues that any acts committed by defendant that potentially can be deemed coercive, occurred weeks before the crime and relate to disclosure of a sexually explicit video. Defendant claims that his communications with Morales regarding the video have no relation to the events that took place on June 14, 2017, which support his current charge.

The probation office responds that despite Morales's statements, it still believes the four-level enhancement is appropriate. It notes that in text messages, Morales pleaded with defendant not to post sexually explicit videos of her. Morales mentioned wanting to commit suicide, and offered to do whatever defendant wanted her to do.

Having considered the evidence presented at the evidentiary hearing, the parties' briefs and supplemental authority, and probation's response, the court finds that the government has met its burden. Defendant is correct that the coercion must "occur[] as

part of the offense." *See* U.S.S.G § 2G1.1(b)(1) Application Note 2. Although the circumstances surrounding the sex video occurred prior to the trip to the casino, it was not so remote in time for the court to conclude that it had nothing to do with the charged criminal activity. S.A. Lagerreta testified that she believed defendant and Morales's communications were related to prostitution, and the court credits her testimony. There was also evidence that defendant was involved in prostitution and posted ads on Backpage.com. Thus, the court finds that this testimony is relevant to the events that took place at the casino.

Regardless, even without consideration of the text messages between defendant and Morales, the court still finds that defendant coerced Morales when they got to the casino in Hobbs. There is no authority that requires the coercion to occur prior to crossing state lines; nor does the court construe U.S.S.G. § 2G1.1(b)(1) so narrowly. After arriving to the casino, defendant "hinted" that he wanted Morales to prostitute for money and became angry and physically violent towards her when he discovered she turned the man away. Therefore, the four-level enhancement under U.S.S.G. § 2G1.1(b)(1) is appropriate under these facts.

**IT IS THEREFORE ORDERED** this 26th day of June, 2018, that defendant's objections to the PSR (Dkts. 29 and 35) are overruled.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE